UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DANNY KENNEDY | CIVIL ACTION |
| VERSUS | NO. 22-4459 |
| LIQUID MUD BARGES, INC. and HPC INDUSTRIAL SERVICES | SECTION: "J"(5) |

### ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 32)** filed by Defendant, HPC Industrial Services, LLC ("HPC"). Plaintiff Danny Kennedy (Rec. Doc. 43) and Defendants MARMAC, LLC (Marmac) and Deep South Construction and Salvage, LLC (Deep South) (Rec. Doc. 41) filed oppositions, to which and HPC replied (Rec. Doc. 43). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED.**

### FACTS AND PROCEDURAL BACKGROUND

This case arises from a November 9, 2021 incident on board a liquid tank barge owned by Defendant Marmac and chartered to Deep South on Bayou Black in Gibson Louisiana. Kennedy alleges that, while he was cleaning the liquid tank barge at HPC's Gibson facility, a barge inspector, Dickie Torbert, told him to turn a valve, which released significant pressure and knocked him fifteen feet into the air and overboard into the bayou. Kennedy sustained injuries to his shoulder and lower back.

1

At the time, Kennedy was employed by Elite Workforce, LLC ("Elite") and was assigned to work at HPC starting in October 2021. Elite and HPC had a Service Agreement controlling the scope of their relationship, the status of the Elite employees on the HPC jobs, and their mutual responsibilities.

As a result of HPC's, Marmac's, and Deep South's alleged negligence, Kennedy seeks damages for his personal injuries. He is also receiving compensation from his employer and his employer's carrier under the Longshore and Harbor Workers' Compensation Act in a separate lawsuit. Twice, the parties jointly moved to continue the trial and pretrial deadlines in this matter to allow for settlement of the workers' compensation matter. (Rec. Docs. 26, 31). The Court granted the motions and reset the trial and other deadlines. (Rec. Docs. 29, 36). Trial is now set for October 15, 2024.

In the instant motion, HPC argues that Kennedy was HPC's borrowed servant at the time of this incident, requiring his third-party tort claim against HPC to be dismissed because his only remedy against HPC is a workers' compensation claim under the LHWCA. (Rec. Doc. 32). Kennedy contends that the motion should be denied because he was an independent contractor employed by Elite, he was not under the control of HPC, he did not acquiesce to being HPC's employee, and he was not injured on HPC's property. (Rec. Doc. 42). Marmac and Deep South also argue that genuine issues of material fact remain as to whether Kennedy was HPC's borrowed employee because insufficient discovery has taken place: only Kennedy had been deposed as of the filing of HPC's motion for summary judgment. (Rec. Doc. 41).

In reply, HPC notes that, even though the Court granted two continuances of the trial date, the most recent continuance did not set a new discovery cutoff or motions deadline, and Marmac and Deep South never requested further discovery in order to sufficiently respond to the instant motion, as contemplated under Federal Rule of Civil Procedure Rule 56(d). (Rec. Doc. 43). HPC also argues that the oppositions demonstrate that most of the relevant factors favor a finding that Kennedy was HPC's borrowed servant. *Id.*

## **LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

## DISCUSSION

The parties do not dispute that Kennedy is a longshoreman or harbor worker whose remedy against his employer is limited to compensation and medical benefits under the LHWCA. 33 U.S.C. § 933(i) ("The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured … by the negligence or wrong of any other person … in the same employ."). However, HPC submits that Kennedy was HPC's borrowed employee, which would also limit his remedy against HPC to his benefits under the LHWCA.

The Fifth Circuit uses a nine-factor test from *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 313 (5th Cir. 1969) to determine borrowed servant status. These nine factors are:

1. Who has control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

2. Whose work is being performed?

3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

4

4. Did the employee acquiesce in the new work situation?

5. Did the original employer terminate his relationship with the employee?

6. Who furnished tools and place for performance?

7. Was the new employment over a considerable length of time?

8. Who had the right to discharge the employee?

9. Who had the obligation to pay the employee?

*Barrios v. Freeport–McMoran Res. Partners Ltd. P'ship*, No. 93–0092, 1994 WL 90456, *2 (E.D. La. Mar. 11, 1994) (Livaudais, J.); *Baker v. Raymond Int'l, Inc.*, 656 F.2d 173, 178 (5th Cir. 1981). "No one factor is determinative, and courts are instructed to look to the "venture as a whole." *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 795 (1949). When the borrowed servant doctrine is used as a defense to tort liability of the LHWCA context, the Fifth Circuit focuses on the fourth, fifth, sixth, and seventh factors, because these factors deal with the question of "whether the circumstances of the employee's employment are such that the defendant 'should be considered an employer and not a third party under the LHWCA.'" *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1245 n.12 (5th Cir. 1988) (citing *Gaudet v. Exxon Corp.*, 562 F.2d 351, 356-57 (5th Cir. 1977), cert. denied 479 U.S. 838 (1986)). Whether Kennedy is the borrowed servant of HPC is a question of law; however, "[i]f some of the factors involve a factual dispute, those factors must be submitted to the jury, unless a sufficient number of the other factors clearly favor summary judgment." *Barrios*, 1994 WL 90456 at *2; *Capps v. N.L. Baroid–NL Industries, Inc.*, 784 F.2d

5

---

615, 617 (5th Cir.1986) (citing *Gaudet*, 562 F.2d at 357–58). The Court evaluates the *Ruiz* factors as follows:

### 1. Who has control over the employee and the work they are performing, beyond mere suggestion of details or cooperation?

The first factor, control, weighs in favor of a finding of borrowed servant status. HPC avers that it exerted significantly greater control over Kennedy than did his nominal employer, Elite, which only assigned Kennedy to work at HPC and did not exercise any control over his work. (Rec. Doc. 32-1, at 6). Kennedy testified that he took all of his instruction from HPC employees, that there were no Elite supervisors on the job site, that HPC supervisors were in charge of the workers on the project, and that he had never been to Elite's office and did not know anyone there. (Rec. Doc. 32-2, at 2-9). Marmac and Deep South note that, at the time of the incident, it was Marmac's barge inspector, not an HPC employee, who instructed Kennedy to work on the valve, and Kennedy's HPC's supervisor was not on board the barge at the time. (Rec. Doc. 42-2, at 7-9). However, the fact that Marmac's employee directed Kennedy on a single occasion does not affect the fact that HPC clearly had more control over Kennedy and his work than his nominal employer, Elite.

### 2. Whose work is being performed?

The parties do not dispute that Kennedy was performing HPC's work cleaning a barge under a contract with Marmac and Deep South. However, at the time of the incident, Kennedy claims he was working at the direction of a barge inspector who

was not employed by HPC. Therefore, this factor raises a factual dispute and is neutral as to borrowed-employee status.

3. **Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?**

The Service Agreement between Elite and HPC states that Elite will provide labor to supplement HPC's existing staff. (Rec. Doc. 32-4, at 5). The Agreement explicitly states that Elite's employees perform their work as independent contractors, not employees of HPC. *Id.* at 5. It goes on to state that HPC shall not attempt to circumvent Elite and hire Elite's employees. *Id.* at 6. Elite and HPC also agreed to indemnify each other for the acts of their own employees. *Id.* at 7.

"In deciding this factor, courts have looked to contractual provisions and the behavior of the parties to determine whether an understanding existed." *LeBlanc v. AEP Elmwood, LLC*, 946 F. Supp. 2d 546, 551 (E.D. La. 2013) (citing *Brown v. Union Oil Co. of California*, 984 F.2d 674, 677 (5th Cir. 1993)). In this case, the Service Agreement purports to preclude borrowed employee status. However, the reality at the HPC worksite was different; as outlined above, HPC exercised direct supervision and control over Kennedy. As a result, this factor weighs against a finding of a meeting of the minds that Kennedy was a borrowed employee.

4. **Did the employee acquiesce in the new work situation?**

"The issue to be resolved under this factor is whether [Plaintiff] had an opportunity to observe the conditions under which he was working and whether, after such an opportunity, he chose to continue working." *Barrios*, 1994 WL 90456 at *2;

7

*Brown*, 984 F.2d at 678. Kennedy testified that he did not make any complaints to HPC regarding his work and never told Elite he did not want to work at HPC. (Rec. Doc. 32-2, at 5). However, in opposition, Kennedy contends that he had not acquiesced to working at HPC "other than in a very brief capacity," because he worked there for less than two weeks while waiting to perform offshore rigging work for Elite. (Rec. Doc. 42, at 6). Marmac and Deep South also argue that it is difficult to state that Kennedy acquiesced to this work based on the limited time (two weeks) that he worked there before the November 9, 2021 incident.

HPC presented evidence that Kennedy did not take issue with his work conditions, and Kennedy, Marmac, and Deep South presented no evidence to dispute that Kennedy acquiesced to his work conditions. Accordingly, this factor weighs in favor of finding borrowed-servant status, but with little weight, because Kennedy had limited time and opportunity to experience and object to his work environment.

## 5. Did the original employer terminate its relationship with the employee?

Termination, for the purposes of this factor, does not require the lending employer to completely sever its relationship with the employee. Instead, this factor depends on "the lending employer's relationship with the employee while the borrowing occurs." *Capps*, 784 F.2d at 618. "The fact that [the employee] had no contact with [his lending employer] and was supervised totally by [his lending employer's] employees while on the platform is sufficient to meet this factor." *Hotard v. Devon Energy Prod. Co. L.P.*, 308 F. App'x. 739, 742 (5th Cir. 2009) (citing

8

*Melancon*, 834 F.2d at 1246). Here, although Elite continued to issue paychecks to Kennedy, he took all of his instructions from HPC employees, there were no Elite supervisors on the jobsite, he considered HPC employers to be his supervisors, and he had never been to the Elite office nor met anyone at Elite. In light of these facts, this factor weighs in favor of finding borrowed-employee status.

**6. Who furnished the tools and place for performance?**

Here, it is undisputed that HPC provided the place of work and some equipment used by Kennedy. Kennedy purchased his own boots, and Elite did not provide any tools and equipment. Therefore, this factor weighs in favor of finding Kennedy was HPC's borrowed servant.

**7. Was the new employment over a considerable length of time?**

The parties agree that Plaintiff worked only a short time with HPC: around two weeks. Therefore, this factor weighs against finding Kennedy was a borrowed employee but will be given minimal weight because it is not especially illuminating.

**8. Who had the right to discharge the employee?**

This factor asks whether HPC had the authority to terminate Kennedy's services with HPC itself, even if HPC could not outright terminate Kennedy's employment with Elite. *See Melancon*, 834 F.2d at 1246 (citing *Capps*, 784 F.2d at 618). Kennedy testified that HPC had the right to fire him if HPC was dissatisfied with his work. (Rec. Doc. 32-3, at 5-6). Additionally, the Service Agreement states that HPC has the right to require Elite to replace workers whose performance was

unsatisfactory to HPC. (Rec. Doc. 32-4, at 4). Both the contract between HPC and Elite and Kennedy's testimony weigh in favor of finding borrowed servant status.

### 9. Who had the obligation to pay the employee?

This factor is not in dispute. Elite billed HPC for labor it provided to HPC, and Elite then paid Kennedy. Because HPC provided the funds to pay Kennedy, this factor weighs in favor of borrowed servant status.

## CONCLUSION

Of the nine borrowed servant factors, a sufficient number of factors clearly favor summary judgment: six factors weigh in favor of a borrowed servant relationship, one factor is neutral, and two factors suggest the borrowed servant relationship did not exist. Of the four factors most significant for a defense in the LHWCA context, three factors favor a finding of a borrowed servant relationship, and one factor weighs slightly against such a finding. Therefore, the circumstances of Kennedy's employment are such that HPC should be considered an employer and not a third party under the LHWCA. Thus, HPC was Kennedy's borrowing employer for purposes of the LHWCA, and so HPC is entitled to summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that Defendant HPC's *Motion for Summary Judgment* **(Rec. Doc. 32)** is **GRANTED**, and Kennedy's claims against HPC are **DISMISSED with prejudice.**

New Orleans, Louisiana, this 8th day of July, 2024.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE